IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DONALD C. SEALS, JR.,

Plaintiff,

v.

STATE OF NEBRASKA-DEPARTMENT
OF HEALTH AND HUMAN SERVICES,

Defendant.

8:23CV489

MEMORANDUM
AND ORDER

This matter is before the Court on defendant State of Nebraska-Department of Health and Human Services's ("DHHS") motion for summary judgment (Filing No. 59). For the reasons explained below, the motion is granted.

## I.   BACKGROUND

*Pro se* plaintiff Donald C. Seals, Jr. ("Seals") is an information-technology ("IT") professional with expertise in a unique programming language called "AION."  He alleges he was terminated from his employment as an "Senior AION Applications Developer" at DHHS because he is black.  He sued DHHS on November 7, 2023 (Filing No. 1), alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1).   Title VII protects employees, but "not independent contractors."  *Schwieger v. Farm Bureau Ins. Co. of Neb.*, 207 F.3d 480, 483 (8th Cir. 2000).  To establish a prima facie case of race discrimination under Title VII, Seals must qualify as an employee.  *See Glascock v. Linn Cnty. Emerg. Med., PC*, 698 F.3d 695, 698 (8th Cir. 2012).  The issue before the Court is whether he does.

Seals's work with DHHS was based on a "Master Services Contract" that the State of Nebraska entered with Covendis Technologies ("Covendis") to provide IT staffing services to its agencies, including DHHS.  The contract's original term ran from November

2016 through November 2020 but was later renewed through 2021.  It states that personnel assigned under the contract "shall not be considered employees of the State."

Covendis then subcontracted with Contract Staffing Specialists, Inc. ("CSS").  CSS in turn executed a "Contract Work Order" agreement with Seals in July 2020 to provide certain IT services to the State of Nebraska—identified in the work order as the "client." CSS cut Seals's paychecks, withheld his taxes, and provided his tax documents.  Seals's Form W-2, Wage and Tax Statement identifies CSS as his employer.  Seals also executed a written waiver with DHHS which states, "I, Donald Seals, hereby acknowledge that I am an employee of Contract Staffing Specialists, Inc. . . . I further acknowledge that I am not an employee of the State of Nebraska."  In line with that waiver, DHHS did not pay Seals's salary or provide him with any employee benefits.

On March 25, 2021, DHHS notified CSS it was terminating the contract with Seals. DHHS asked CSS to inform Seals after 5:00 p.m. that day and return his state identification card.  Seals did not receive any separation notice or other personnel paperwork from DHHS.

## II.    DISCUSSION

### A.    Standard of Review

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  DHHS "can satisfy its burden in either of two ways: it can produce evidence negating an essential element of [Seals's] case, or it can show that [he] does not have enough evidence of an essential element of [his] claim to carry [his] ultimate burden of persuasion at trial." *Becker v. City of Hillsboro*, 125 F.4th 844, 851 (8th Cir. 2025) (quoting *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018)).  If DHHS does that, Seals "must come forward with 'specific facts'" showing that there is a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

2

In either case, Seals can neither "rest on mere denials or allegations" nor rely on "some metaphysical doubt about the material facts." *Bedford*, 880 F.3d at 997.

Seals must also "make a showing sufficient to establish the existence" of every element "essential to [his] case." *Schmit v. Trimac Transportation, Inc.*, 172 F.4th 612, 618 (8th Cir. 2026); *accord Stephens v. U.S. Env't Servs. LLC*, 167 F.4th 495, 498 (8th Cir. 2026). "Failure to do so 'renders all other facts immaterial' and entitles the moving party to judgment as a matter of law." *Schmit*, 172 F.4th at 618 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## B.    Title VII

DHHS argues the undisputed facts demonstrate Seals was never an employee of DHHS within the meaning of Title VII. As noted, Title VII "prohibit[s] employment discrimination based on race, color, religion, sex, or national origin, but independent contractors are not protected under [the] statute." *Glascock*, 698 F.3d at 698. The case then turns on the definition of employee. Because Title VII's nominal definition of "employee" as "an individual employed by an employer," 42 U.S. Code § 2000e(f), "is completely circular and explains nothing," *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992), courts use the common-law test from *Nationwide Mutual Insurance Company v. Darden* to determine whether a worker is an employee or an independent contractor. *See Glascock*, 698 F.3d at 698 (applying the *Darden* test).

Under *Darden*, the Court considers "'all aspects of the working relationship' between the parties." *Schwieger*, 207 F.3d 483 (quoting *Wilde v. County of Kandiyohi*, 15 F.3d 103, 106 (8th Cir. 1994)). "A primary consideration" is whether DHHS was able to "to control the manner and means by which a task is accomplished." *Id.* at 484. The Court then considers

> (1) the skill required, (2) the source of the instrumentalities and tools, (3) the location of the work, (4) the duration of the relationship between the parties, (5) whether the hiring party has the right to assign additional projects to the

> hired party, (6) the extent of the hired party's discretion over when and how long to work, (7) the method of payment, (8) the hired party's role in hiring and paying assistants, (9) whether the work is part of the regular business of the hiring party, (10) whether the hiring party is in business, (11) the provision of employee benefits, and (12) the tax treatment of the hired party.

*Glascock*, 698 F.3d at 698 (citing *Darden*, 503 U.S. at 323-24).  Finally, the Court looks to "the 'economic realities' of the relationship, and the terms of the agreement," *id.* (internal citations omitted), such as "how the work relationship may be terminated and whether the worker receives yearly leave," *Schwieger*, 207 F.3d at 484.

"Although the employee-independent contractor inquiry is fact-intensive," *id.*, whether Seals "is an independent contractor or employee is an appropriate question for summary judgment," *Glascock*, 698 F.3d at 698; *accord Lerohl v. Friends of Minn. Sinfonia*, 322 F.3d 486, 488 (8th Cir. 2003) (noting whether a hired party is an "employee[] or independent contractor[] is one of law," which "may properly be resolved by summary judgment").  Summary judgment is proper where "a balance of factors show" that the worker was an independent contractor.  *Glascock*, 698 F.3d at 698.

DHHS first argues the undisputed evidence shows it exercised no right to control the manner and means by which Seals accomplished his work.  However, that assertion is not supported by specific citations to the record.  *See* Fed. R. Civ. P. 56(c)(1) (requiring assertions that a fact cannot be genuinely disputed to be established by specific citations to the record).  To be sure, it is undisputed that the State of Nebraska entered into a contract with Covendis to provide IT services to DHHS and that Covendis subcontracted CSS, which then executed a "Contract Work Order" agreement with Seals.  It is also undisputed that CSS set Seals's hourly rate, processed his payroll, and maintained his personnel records.  But those undisputed facts do not specifically address the issue of control over Seals's day-to-day work.

Seals contends in a sworn affidavit that DHHS did control the manner and means by which he accomplished his work.  He states DHHS interviewed and selected him for

4

the role, provided him with a workstation on-site, and assigned him specific daily work tasks. He further asserts he communicated with DHHS supervisors—not CSS—whenever he had a question regarding those daily work tasks. According to Seals, his DHHS supervisors gave him ongoing feedback and answered his daily questions related to priorities and implementation details. And while CSS cut his checks, he had to submit his work hours to DHHS supervisors for approval. He also claims DHHS unilaterally reduced the number of hours he was permitted to work in December 2020. The issue of control is inconclusive in this case. *See Schwieger*, 207 F.3d at 484-85 (finding the control issue was inconclusive because the hiring party provided training courses, urged its workers to keep regular business hours, and regularly reviewed its workers' profitability, dress, and attitude). Even so, the control issue does not necessarily dictate the outcome. *See id.* at 486-87.

Turning to the *Darden* factors, the Court notes there is no "precise number of factors" needed to create a genuine dispute of material fact "as to whether a hired party is an employee or an independent contractor." *Glascock*, 698 F.3d at 698; *see also Schwieger*, 207 F.3d at 486-87 (concluding the hired party was an independent contractor even though only five of the twelve *Darden* factors cut in favor of independent-contractor status and the control issue was "inconclusive"). That said, "merely showing 'some aspects [that] suggest an employment relationship' is insufficient to survive summary judgment." *Glascock*, 698 F.3d at 698 (quoting *Schwieger*, 207 F.3d at 487).

In this case, a number of *Darden* factors support the conclusion that Seals was an independent contractor. Seals was a skilled "Senior AION Applications Developer," commanding $70 per hour, plus stipends. The "Contract Work Order" agreement between Seals and CSS limited the duration of the relationship to two years. DHHS is not in the business of providing specialized IT services. *Cf. Schwieger*, 207 F.3d at 486 (finding that the ninth and tenth *Darden* factors cut in favor of employee-status because both the insurance agent and insurance company were in the business of selling insurance). The

5

economic realities and terms of Seals's agreement also support the conclusion that he was an independent contractor. CSS processed Seals's paychecks, withheld his taxes, and issued him a W-2 identifying CSS as his employer. He received no employee benefits from DHHS such as leave, severance pay, or retirement benefits. *See Schwieger*, 207 F.3d at 486. What's more, his waiver with DHHS "expressly identified [him] as an independent contractor." *Wortham v. Am. Fam. Ins. Grp.*, 385 F.3d 1139, 1140 (8th Cir. 2004). While the waiver is not dispositive on its own, it "evidences the parties' original intent to enter into an independent contractor relationship, and indeed that is what they did." *Schwieger*, 207 F.3d at 487.

In the end, Seals's argument boils down to the assertion that some aspects of his relationship with DHHS suggest an employment relationship. But that is not enough. *See Glascock*, 698 F.3d at 698. Otherwise, it would transform a factors test into an element analysis.

Viewing all the undisputed record evidence, the Court concludes the working relationship between Seals and DHHS constituted an independent-contractor relationship. Because the Court concludes Seals was an independent contractor and he has failed to establish a genuine dispute of material fact, DHHS is entitled to summary judgment. *See Lerohl*, 322 F.3d at 488. Accordingly,

IT IS ORDERED:

1.    Defendant State of Nebraska-Department of Health and Human Services's motion for summary judgment (Filing No. 59) is granted. This case is dismissed with prejudice.

2.    A separate judgment will issue.

Dated this 2nd day of July 2026.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge

6